**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**RACHEL KNAPKE,**

      **Petitioner,**                         **CASE NO. 2:10-CV-485**
                                                 **Judge Sargus**
      **v.**                             **Magistrate Judge King**

**JUDGE MARK HUMMER,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the *Petition*, Doc. No. 1, Respondent's *Return of Writ, Doc. No. 6,* Petitioner's *Reply,* Doc. No. 11, Respondent's *Response,* Doc. No. 14, Petitioner's *Reply to Respondent's Response*, Doc. No. 15, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **GRANTED**, and that Petitioner's conviction on OVI *per se* under O.R.C. § 4511.19(A)(1)(h) be **VACATED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On March 3, 2008, appellant was pulled over by Staff Lt. Brian Landis of the Ohio Highway Patrol, who observed appellant's vehicle driving erratically. Lt. Landis smelled alcohol upon approaching appellant's vehicle, and called Trooper Rustun Schack to complete the traffic stop. Trooper Schack conducted field sobriety tests on appellant, after which she was placed under arrest and transported to the Grove City Police Department for the purpose of obtaining a breath test. Trooper Schack conducted the breath test, which showed that appellant had an alcohol level of .284 grams per 210 liters of breath. Appellant was charged with OVI in violation of R.C. 4511.19(A)(1)(a) and OVI per se in violation of R.C. 4511.19(A)(1)(h).

Before trial, appellant filed a motion to suppress the results of the breath test, arguing that the test was not conducted in accordance with R.C. 4511.19 and Ohio Adm.Code 3701-53-02. On August 20, 2008, the court held a hearing on the motion to suppress, after which the court denied the motion. In the entry denying the motion, the court stated, "All portions of the motion were withdrawn with the exception of the validity of the calibration and specific test results on the day alleged. The court finds that the breath testing instrument was properly calibrated and that the test was properly administered."

During trial, while appellant's counsel was cross-examining Trooper Schack, the following exchange occurred:

> Q. You're a person that knows about the [breath testing] machine, correct?
>
> A. Yes.
>
> Q.: All right. Now, you're also able to calibrate the machine, correct?
>
> A. Yes.
>
> Q. Now, you personally didn't calibrate this machine, right?
>
> A. No.
>
> Q. But you are aware that the machine has-this machine upon which you tested Ms. Knapke has an internal diagnostic function that prior to each test, if you hit a button, it will run through all the internal diagnostics and give you a printout as to whether or not it's in working order, correct?
>
> MR. STEINBERG: Objection; lack of foundation and relevance.
>
> THE COURT: Please approach.

(Tr. 76-77.)

At sidebar, the following discussion was held:

THE COURT: Where are we going with this?

MR. SHAMANSKY: I'm asking about what he did on the test. I'm following up to the questions about how he ran the test. The reality is there is an internal diagnostic button he can push to see if everything is working. I'm asking if he did it.

THE COURT: Here's the problem: You filed a motion to suppress.

* * *

THE COURT: Okay. The Court's placed an entry on saying that your motion was overruled-

MR. SHAMANSKY: Uh-huh, that's correct.

THE COURT:-that all portions of the motion were withdrawn with the exception of validity of the calibration-

MR. SHAMANSKY: Uh-huh.

THE COURT:-and specific test results on the day alleged.

MR. SHAMANSKY: Right.

THE COURT: The Court finds that the breath testing instrument was properly calibrated and that the test was properly administered. That's the rule and the law of this case now.

* * *

THE COURT: That's the law of this case. So if you want to raise questions about the validity of the test-

MR. SHAMANSKY: Uh-huh.

THE COURT:-and the procedure used, you really can't.

MR. SHAMANSKY: Well, no, actually, I disagree.

And, again, I'll follow whatever you tell me to do.

So you don't get angry with me again, the reality is I'm allowed to ask this man about the specifics of this test. And if he didn't run the diagnostic check, what would be the harm in me asking him? There is absolutely no case law that precludes me from asking about this specific test. *Vega* goes to the general reliability of the test. I can ask him specifically what he did on this test. The Government asked him-

THE COURT: You had your opportunity and there was a finding which is now the law of this case.

MR. SHAMANSKY: Okay.

THE COURT: That the testing instrument was properly calibrated and the test was properly administered.

* * *

MR. SHAMANSKY: Okay. Just so everybody is clear, I'm not allowed to ask any questions about the manner in which he administered the test? That's your ruling, correct?

THE COURT: Since you won't answer the question, where are you going with that?

MR. SHAMANSKY: Judge, I did answer the question. He's going to say he didn't run that diagnostic check.

THE COURT: We've had a motion hearing where you had an opportunity to ask all these questions, and the law of this case now is the following, per entry, that the instrument was properly calibrated and the test was properly administered.

MR. SHAMANSKY: Well, Judge, I'll follow whatever you tell me to do, but where I'm going with this is independent of the calibration, it's a test he could have run and didn't. I should be able to ask him about that. I've got a right to confront this witness, but I recognize

4

your ruling and I'll proffer it afterwards if you're telling me I can't ask the question.

THE COURT: Was your line of questioning that it was improper, he didn't do-

MR. SHAMANSKY: Not that it's improper. It was he could have done it and didn't. I'll argue in closing he didn't take every step necessary to make sure this test was valid.

THE COURT: You can't argue that.

MR. SHAMANSKY: Okay. Then, I'll proffer later.

THE COURT: You want to proffer it right now?

MR. SHAMANSKY: I think I-

THE COURT: You're right here.

MR. SHAMANSKY: I think I've done a good job-

THE COURT: All right. Thank you.

(Tr. 77-81.)

No formal proffer was subsequently made.FN1 The trial proceeded, and the jury returned verdicts of guilty on both the OVI and OVI per se charges. The court merged the two charges for sentencing. The court imposed a $250 fine, a five-year driver's license suspension, and imposed a sentence of 60 days of incarceration, 53 days of which were suspended. Appellant then filed this appeal, alleging a single assignment of error:

FN1. We will assume for the sake of argument that counsel's statements during the sidebar discussion were sufficient to preserve the issue for appeal, even in the absence of a more formal proffer.

THE TRIAL COURT VIOLATED APPELLANT'S RIGHT OF CONFRONTATION AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY PROHIBITING CROSS-EXAMINATION OF THE STATE'S WITNESS REGARDING THE BAC DATA MASTER THAT

PRODUCED HER BREATH TEST RESULT.

*State v. Knapke,* No. 08AP-933, 2009 WL 180975, at *1-3 (Ohio App. 10th Dist. June 23, 2009).  On June 23, 2009, the appellate court affirmed the trial court's judgment.  On November 8, 2009, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *State v. Knapke*, 123 Ohio St.3d 495 (2009).

Through counsel, on May 28, 2010, Petitioner filed the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Although Petitioner is not currently in custody, the parties agree that this Court nevertheless has jurisdiction in these proceedings in light of the trial court's suspension of the  execution of her sentence pending the outcome of these proceedings.  *See Hensley v. Municipal Court*, 411 U.S. 345, 35-52 (1973).  Petitioner challenges only her conviction on the charge of operating a motor vehicle with a prohibited blood alcohol content in violation of O.R.C. § 4511.19(A)(1)(h).  She asserts, as her sole ground for habeas corpus relief, that she was convicted on this charge in violation of the Confrontation Clause because the trial court prohibited her from cross-examining Officer Schack regarding the administration of the BAC data master and the results of her breath test.  In a related argument, Petitioner challenges the constitutionality of the Ohio Supreme Court's holding in *State v. Vega,* 12 Ohio St.3d 185 (1984), as violative of the Confrontation Clause.                                        **MERITS**

The state appellate court rejected Petitioner's claim as follows:

> The Confrontation Clause of the Sixth Amendment to the United
> States Constitution guarantees the right of a criminal defendant to
> confront and cross-examine witnesses testifying against him or her.
> *State v. Parsons,* 10th Dist. No. 06AP-410, 2007-Ohio-1204, citing
> *Pointer v. Texas* (1965), 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923.
> However, a trial court retains wide latitude under the Confrontation
> Clause to impose reasonable limits on cross-examination based on
> concerns about issues such as harassment, prejudice, confusion of

6

issues, witness safety or interrogation that is repetitive or irrelevant. *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis sic.) *Delaware v. Fensterer* (1985), 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15. The trial court's discretion in such matters is broad, and a trial court's decision will not be disturbed absent an abuse of discretion. *State v. Myers,* 97 Ohio St.3d 335, 780 N.E.2d 186, 2002-Ohio-6658.

Initially, we note, and appellant concedes, that the evidence appellant sought to introduce regarding the existence of a diagnostic feature on the breath testing machine would only have been relevant to the OVI per se charge. In OVI per se cases, the trier of fact is not required to determine whether the defendant was under the influence of alcohol or drugs at the time of the offense; rather, the trier of fact must only determine whether the defendant had a prohibited level of alcohol while operating a motor vehicle. *State v. Sabo,* 10th Dist. No. 04AP-1114, 2006-Ohio-1521, citing *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 573 N.E.2d 32. Admissibility into evidence of the test results offered to show that a defendant had a prohibited alcohol level turns on whether the test was conducted in substantial compliance with regulations established by the Ohio Department of Health. *Id.*

A defendant may not use expert testimony to attack the general reliability of the breath testing procedure, but may attack the reliability of the specific testing procedure. *State v. Vega* (1984), 12 Ohio St.3d 185, 465 N.E.2d 1303. See also *State v. Tanner* (1984), 15 Ohio St.3d 1, 13, 472 N.E.2d 689 ("[t]he defendant may * * * challenge the accuracy of his specific test results, although he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels").

In this case, appellant argues that the question regarding the diagnostic switch was intended to challenge the reliability of the specific result in her case, not the general validity of the testing procedure. However, during the above quoted discussion regarding this issue, appellant's counsel stated that it was his intention to argue that Trooper Schack could have pressed the diagnostic button, and that doing so would have resulted in a more reliable test result, but that this action was not taken. Thus, the line of questioning did constitute a challenge to the validity of the testing procedure, because appellant would have been asking the jury to conclude that the testing procedure should have

included the step of pressing the diagnostic switch.

> Consequently, the trial court did not abuse its discretion when it limited appellant from questioning the validity of the testing procedure. Accordingly, appellant's assignment of error is overruled.

*State v. Knapke*, 2009 WL 1803875, at *3-4.

The factual findings of the state appellate court are presumed to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Further, a federal habeas court may not grant relief unless the state court's

decision was contrary to or an unreasonable application of clearly established federal law, or based

on an unreasonable determination of the facts in light of the evidence that was presented.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) . In order to obtain habeas corpus relief, a petitioner must show that the state

court's decision was "so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*,

– U.S. –, 132 S. Ct. 26, 27 (2011)(quoting *Harrington v. Richter,* 562 U.S. ——, ——, 131 S.Ct.

770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v.Richter*, 131 S.Ct. at 786 (quoting *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.* (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).  *See also Wetzel v. Lambert,* – U.S. –, 132 S.Ct. 1195, 1198 (2012).

The Sixth Amendment to the United States Constitution guarantees to criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial.  *Illinois v. Allen,* 397 U.S. 337, 388 (1970). In *Crawford v. Washington,* 541 U.S. 36 (2004), the United States Supreme Court abrogated its holding in *Ohio v. Roberts,* 448 U.S. 56 (1980), and re-defined the test for determining whether admission of hearsay statements violates the Confrontation Clause. The Supreme Court in *Crawford* held that the testimonial statements of a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify and the defense had a prior opportunity to cross examine the witness.  Under *Crawford*, "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination." *Id.* at 1366. The Supreme Court, however, left untouched the application of *Roberts* to cases involving nontestimonial hearsay:

> ["W]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts,* and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. As the courts applying *Crawford* have observed,

> [t]he lynchpin of the *Crawford* decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only to the former category of statements.... [U]nless a particular hearsay statement qualifies as "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*Coy v. Renico,* 414 F.Supp.2d 744, 773 (E.D. Mich.2006) (quoting *United States v. Hendricks,* 395 F.3d 173, 179 (3d Cir. 2005)). *See also Horton v. Allen,* 370 F.3d 75, 83-84 (1st Cir. 2004).

*Crawford* did not provide a comprehensive definition of the term "testimonial," but indicated that, at a minimum, the term includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Crawford,* 541 U.S. at 68. A casual remark to an acquaintance, business records and statements made in furtherance of a conspiracy do not constitute testimonial statements within the protection of the Sixth Amendment. *Id.* at 51-55. Further, "admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. . . . [T]he statement must be used as hearsay – in other words, it must be offered for the truth of the matter asserted." *United States v. Pugh,* 405 F.3d 390, 399 (6th Cir. 2005). A violation of the Confrontation Clause is subject to harmless error review. *Id.* at 400 (citing *Jordan v. Hurley,* 397 F.3d 360, 363 (6th Cir. 2005)). Moreover, although the Sixth Amendment guarantees to a criminal defendant the right to cross-examine witnesses against her, this right is not unlimited. "Trial judges retain wide latitude. . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986). The Confrontation Clause thus guarantees the opportunity

for effective cross-examination – not cross-examination in whatever way or to whatever extent the defendant may desire.  *Id.* (quoting *Delaware v Fensterer*, 474 U.S. 15, 20 (1985)); *see also Norris v. Schotten*, 146 F3d 314, 330 (6th Cir. 1998)(no Confrontation Clause violation where relevance of questions prohibited on cross-examination is unclear and risk of prejudice is real)(citations omitted).

      In *State v. Vega*, the Ohio Supreme Court considered whether a criminal defendant charged with OVI or OVI *per se* could present expert testimony attacking  the general reliability of the intoxilyzer machine, which is used to obtain breath test results indicating the level of alcohol in a criminal defendant's blood.  The Ohio Supreme Court concluded that the Constitution does not require that a defendant be permitted to present such evidence and held that a defendant so charged may not attack the general reliability of the intoxilyzer, where the Ohio legislature has provided for admission of such test results conducted in accordance with the methods approved by the Ohio Director of Health.  *Vega*, 12 Ohio St.3d at 186.   However, *Vega* recognized that the accused retains the right to challenge the reliability of the specific testing procedure used in her case and the qualifications of the operator of the machine as well as the ability to "introduce any other competent evidence bearing upon the question of whether [s]*he* was under the influence of intoxicating liquor." *Id*. at 189.

> Rebuttable evidence may include non-technical evidence of sobriety, such as a videotape or testimony by the accused or by witnesses concerning the accused's sobriety and the amount of consumption, as well as technical evidence, such as additional chemical tests and the completion of field sobriety tests.

*Id*.

      The United States Court of Appeals for the Sixth Circuit upheld the constitutionality of *Vega*, noting that the Ohio Supreme Court's decision did not prevent the defendant from cross-examining

police "on whether they properly administered the breath test, whether they complied with the Ohio Health Department's mandatory guidelines for operating the test, and whether the specific machine used to test Petitioner was functioning properly and reliably." *Miskel v. Karnes*, 397 F.3d 446, 452 (6th Cir. 2005). The Sixth Circuit specifically held in *Miskel* that the accused had not been denied the right to confront witnesses against her:

> There is no indication that the appeals court or the trial court interpreted *Vega* as precluding a challenge to the accuracy and reliability of the specific machine used to test Petitioner. Furthermore, we note that there is no indication that the trial court in fact precluded Petitioner from making such a challenge. Indeed, Petitioner's counsel cross-examined Officers Wetzel and McKelvey regarding the accuracy and reliability of the machine they used to test her breath. *See, e.g.,* J.A. at 670-71, 698-702 (trial transcript).
>
> *         *         *
>
> The Ohio legislature has committed the determination of whether certain breath testing machines are generally reliable to the state's Director of Health. Ohio Rev. Code § 4511.19(D). On this basis, the trial court determined that the issue of a breath testing machine's general reliability is irrelevant; the only relevant issues, given the conclusion that the machine in general is reliable, are whether the specific machine used to test Petitioner functioned properly and reliably during the particular test in question and whether the officers who operated the machine did so in accordance with the Health Department's regulations. . . . The trial court permitted cross examination on all of these issues.
>
> In sum, Petitioner had a full and fair opportunity to challenge the credibility and reliability of the state's witnesses by inquiring as to their qualifications and knowledge about the specific machine's competence during the test performed on Petitioner. Consequently, the limits on cross examination imposed by the trial court did not disable Petitioner from attacking the accuracy and reliability of the specific BAC Verifier used to measure her BAC. Because Petitioner had an "opportunity for effective cross examination," [*Delaware v.*] *Fensterer,* 474 U.S. [15,] 20 [1985], we hold that the trial court's ruling was not contrary to or an unreasonable application of clearly established federal law.

*Id*. at 452-53 (citations and footnotes omitted).

Petitioner contends that the Sixth Circuit's holding in *Miskel* is irrelevant because the trial court in this case prohibited her from cross-examining police regarding the reliability of the specific test results in her case and because the United States Supreme Court's more recent decision in *Melendez-Diaz v. Massachusetts,* 557 U.S. 305 (2009), has altered the appropriate analysis. In *Melendez-Diaz*, the United States Supreme Court held that an affidavit reflecting the results of a forensic analysis constituted testimonial evidence within the meaning of *Crawford* and that failure to require the in-court testimony of the analyst who conducted the test violated the defendant's Sixth Amendment right to cross-examine witnesses.

> To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. . . . Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes.
>
> Respondent and the dissent may be right that there are other ways – and in some cases better ways – to challenge or verify the results of a forensic test.[FN5] But the Constitution guarantees one way: confrontation. We do not have license to suspend the Confrontation Clause when a preferable trial strategy is available.
>
> FN5. Though surely not always. Some forensic analyses, such as autopsies and breathalyzer tests, cannot be repeated, and the specimens used for other analyses have often been lost or degraded.

557 U.S. – , 129 S.Ct. at 2536.

Even more recently, and after the parties' filings in this case, the United States Supreme Court held that a blood alcohol breath test report constitutes testimonial evidence within the ambit of the Sixth Amendment and that a defendant has a constitutional right to cross-examine the analyst

who conducted the breath test, absent unavailability of the witness and prior opportunity for cross-examination. *Bullcoming v. New Mexico*, – U.S. –, 131 S.Ct. 2705 (2011). In *Bullcoming*, the prosecution failed to present the witness who had conducted the blood-alcohol test, but instead introduced the evidence through another analyst who had no involvement in the specific test but who qualified as an expert in connection with the testing machine. *Id.* at 2713. In overturning Bullcoming's conviction, the Supreme Court stated:

> [T]he comparative reliability of an analyst's testimonial report drawn from machine-produced data does not overcome the Sixth Amendment bar. This Court settled in *Crawford* that the "obviou[s] reliab[ility]" of a testimonial statement does not dispense with the Confrontation Clause. 541 U.S., at 62, 124 S.Ct. 1354; see *id.,* at 61, 124 S.Ct. 1354 (Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing [the evidence] in the crucible of cross-examination"). Accordingly, the analysts who write reports that the prosecution introduces must be made available for confrontation even if they possess "the scientific acumen of Mme. Curie and the veracity of Mother Teresa." *Melendez–Diaz,* 557 U.S., at ——, n. 6, 129 S.Ct., at 2537, n. 6.

*Id.* at 2715.

Respondent argues that Petitioner failed to fairly present to the Ohio Court of Appeals any claim regarding the constitutionality of *Vega* and has therefore waived this claim for federal habeas corpus review. Alternatively, Respondent argues that this Court is bound by the Sixth Circuit's holding in *Miskel*. Respondent insists that *Melendez-Diaz* has no bearing on these proceedings, referring to various state court cases for the proposition that calibration results or other documents establishing the accuracy of a breath testing machine do not constitute testimonial evidence under the Sixth Amendment. *Response.*

Petitioner, however, argues that the breathalyzer test, conducted for the purpose of developing evidence for later use against the defendant at trial, constitutes "testimonial evidence" within the

meaning of the Sixth Amendment and *Crawford*. She notes that the State presented the testimony of Officer Schack, who testified that the breath test was valid, that the machine was in good working order and that "the sample was good," but she complains that the trial court prohibited her from cross-examining Officer Schack on these very same issues. *Petitioner's Reply*, at 13-16. Petitioner also points out that most courts in other jurisdictions that have considered this issue have concluded that the Constitution protects a criminal defendant's right to attack the reliability of the breath testing machine.[1] *Id*. at 18-20.

This Court concludes that it is bound by the decision of the United States Court of Appeals for the Sixth Circuit in *Miskel*, which upheld the constitutionality of *Vega*. The Court therefore need not determine whether Petitioner fairly presented to the state courts her constitutional challenge to the holding in that case.

However, even applying *Vega* and *Miskel*, the Court also concludes that Petitioner was denied her constitutional right to effective cross examination of the witness against her. Unlike the trial court in *Miskel*, the trial court in this case prohibited Petitioner from attacking the accuracy or reliability of the specific BAC Verifier used to measure her blood-alcohol content on the date and time in question. *Cf. Miskel*, 397 F.3d at 452-53 (trial court permitted cross examination on "whether the specific machine used to test Petitioner functioned properly and reliably during the particular test in question and whether the officers who operated the machine did so in accordance with the Health Department's regulations").

As recounted *supra*, Officer Schack testified on direct examination that he was certified to

---

[1] Petitioner specifically refers to *Fuenning v Superior Court*, 680 P.2d 121 (Ariz. 1984); *State v. Lowther,* 7 Haw. App. 20 (Hawaii 1987); *Cooley v. Municipality of Anchorage*, 649 P.2d 251 (Alaska App 1982). *Petitioner's Reply*, at 19-20.

conduct the breathalyzer test, that Petitioner blew into the machine, and that he obtained a "valid sample." *Trial Transcript*, at 65. "The sample was good. There was no interference with the machine. It was good. There was nothing wrong on the machine." *Id*. The trial court, however, prohibited defense counsel from inquiring on cross examination about the validity of the specific test results or the procedure followed by Officer Schack in administering the test, including whether Officer Schack had run a diagnostic test on the machine prior to testing, taking the position that the inquiry was irrelevant or that these issues had already been addressed in connection with Petitioner's motion to suppress. This Court is not persuaded by Respondent's argument that defense counsel was attempting to improperly challenge only the general reliability of the machine or that Petitioner's questions were irrelevant to her specific test results. By limiting Petitioner's ability to fully cross examine Officer Schack on these issues, the trial court prohibited Petitioner from making inquiry into the specific test results at issue, which was an essential element of the crime charged. Under these circumstances, this Court concludes that Petitioner was denied her constitutional right to confront the witness.

      **WHEREUPON**, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **GRANTED** and that Petitioner's conviction on OVI *per se* under O.R.C. § 4511.19(A)(1)(h) be **VACATED**.

### PROCEDURE ON OBJECTIONS

      If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of

the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

*s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge

May 21, 2012